***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pretrial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. The plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from November 6, 1967 to present.
4. The plaintiff was last injuriously exposed to asbestos during the plaintiff's employment with defendant, Weyerhaeuser Company, and specifically, that the plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as is required by N.C. Gen. Statute § 97-57.
5. The defendant stipulated that the plaintiff does suffer from an occupational disease, asbestosis; further that he was diagnosed with asbestosis on December 10, 1997 by Dr. Dennis Darcey. The defendant further agrees that a Member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records will be stipulated into evidence for consideration by the undersigned.
6. The plaintiff's income fifty-two (52) weeks prior to his diagnosis of asbestosis was $55,319.93, which was sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the diagnosing year of 1997 which is $512.00.
7. Plaintiff contends that he is entitled to an award of ten percent (10%) penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and the defendant agreed that should the claim be found compensable, the defendant agreed by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
8. The parties agreed further that should plaintiff be awarded compensation, the undersigned may include language removing the plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-61.5(b).
9. The parties further agreed that should the undersigned determine N.C. Gen. Stat. § 97-60 through § 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
10. The issues before the Deputy Commissioner were:
 a. Does N.C. Gen. Stat. § 97-60 through § 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
b. What benefits is the plaintiff entitled to receive, if any?
The medical records by the following physicians were introduced into evidence without objection by the parties:
a. Dr. Dennis Darcey
b. Dr. Dale R. Shaw
c. Dr. Fred M. Dula
d. Dr. Allen Hayes
e. Dr. James Johnson
f. Dr. Phillip Lucas
g. Dr. T. Reginald Harris
h. Dr. Edwin Newman
 ***********
Based upon all the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Full Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff is currently employed by defendant.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. The plaintiff has been employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from November 6, 1967 until present.
4. The plaintiff was initially a pipe fitter and subsequently became a senior mechanic, but still worked as a pipe fitter. During all of his employment with defendant, he was exposed to asbestos dust at various places throughout the Plymouth facility.
5. The plaintiff was exposed to significant amounts of asbestos dust when he worked in the boiler room where there were nine (9) different boilers. The insulation on piping throughout the boiler room contained asbestos. He worked in the boiler room for over 15 years and was exposed to asbestos dust from deteriorating insulation on a regular basis each day that he worked. Also, when plaintiff removed asbestos insulation from the boilers, he would knock it off with a hammer. Throughout his years of employment, plaintiff repaired pipes, tied pipes in, beat asbestos off pipes and changes valves. Plaintiff continued to be exposed to asbestos dust when he went to the digester building and the pulp mill and while doing shift work. All of his jobs involved general repair work and general pipe work.
6. The plaintiff was not provided any respiratory equipment to protect against his harmful exposure to asbestos. The air in the boiler room was dusty and his clothes at times would be covered with particles from the insulation.
7. The plaintiff has been exposed to asbestos containing materials on a regular basis throughout the course of his employment with defendant.
8. The defendant admitted that the plaintiff does suffer from asbestosis, an occupational injury.
9. Plaintiff was examined by Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University on December 10, 1997. Dr. Darcey took an occupational history from the plaintiff which included that he had worked as a pipe fitter and mechanic and believed he was exposed to asbestos dust over the course of his 30 years of employment. Plaintiff described ripping out insulation materials on pipes and valves to do repairs several times per week. Further, that he spent 17 years in the boiler and turbine room and removed asbestos insulating during repairs and retrofits that were very dusty. His history also included scraping asbestos gaskets off pipes. He did not wear any respiratory protection.
10. It was the opinion of Dr. Darcey that plaintiff suffers from asbestosis and asbestos related pleural changes. His conclusion was based on the history of exposure to asbestos with adequate latency to develop asbestosis, an ILO chest x-ray and B-read and high resolution CT scan of the chest showing changes consistent with asbestos exposure with interstitial and pleural changes, pulmonary function tests which showed restrictive disease and decreased diffusion capacity consistent with asbestosis. Dr. Darcey assigned a respiratory impairment rating of Class 2, consistent with restrictive impairment resulting from asbestos exposure.
11. Dr. Darcey recommended that the plaintiff undergo periodic monitoring for progression of asbestos related disease including pulmonary function testing and chest x-rays. Dr. Darcey noted that further deterioration in lung function can occur even after exposure has ceased. He further recommended that the plaintiff avoid further exposure to asbestos. Dr. Darcey was of the opinion that plaintiff remains at an increased risk of developing lung cancer and mesothelioma, as opposed to non-exposed individuals and that medical monitoring is recommended.
12. Plaintiff's CT scan and chest x-ray interpreted by Dr. Dale R. Shaw of Charlotte Radiology dated July 26, 1997, was abnormal. Dr. Shaw found moderate pleural plaquing as well as interstitial changes in the lower right lung base and left lung base, which when viewed collectively, suggested changes compatible with asbestosis. The chest x-ray, which he also interpreted, showed findings suggesting interstitial lung disease.
13. It was the opinion of Dr. Phillip H. Lucas, a NIOSH B-reader.
who also evaluated the same chest film, that there were present bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
14. Dr. Allen Hayes of Raleigh Internal Medicine also reviewed the July 26, 1997 chest film and indicated that there were parenchymal abnormalities consistent with pneumoconiosis present. Dr. Hayes further indicated in his report that the high resolution CT scan confirmed the parenchymal changes and that there were subtle non-calcified pleural plaques also present.
15. Dr. James Johnson and Dr. Fred Dula of Piedmont Radiology in Salisbury, both B-readers, reviewed the chest x-ray and both concluded there were both parenchymal and pleural changes present consistent with a pneumoconiosis.
16. On November 4, 1998, the plaintiff was examined by Dr. T. Reginald Harris, a Member of the North Carolina Occupational Disease Panel. The plaintiff advised Dr. Harris that he had smoked about a pack of cigarettes a day for over 40 years but was now down to smoking less than one-half pack per day. Plaintiff advised Dr. Harris that for the first 17 years after he went to work for the defendant, he worked in the powerhouse which had asbestos dust in his area. Further, he tore out asbestos coverings on pipes for a number of years and was generally exposed to asbestos dust for many years. He stated that the plant was full of asbestos in those years and he didn't know anything about it and thought nothing about it.
17. Dr. Harris ordered a chest x-ray which was interpreted by Dr. Edwin Newman, a B-reader at Charlotte Radiology. Dr. Newman found a probable pleural plaque to be present along with some parenchymal changes. The parenchymal changes found were bilateral and in the mid and lower lung fields. It was the opinion of Dr. Harris that the plaintiff suffers from asbestos related pleural disease including mild pleural thickening/pleural plaques, and also, possibly asbestosis. He also found bordering restrictive lung disease and assigned an impairment rating, based on the AMA guidelines of between Class 1 and Class 2 with an estimated 5% of the whole person and concluded that these changes were probably due to his asbestos exposure. Although the plaintiff was a smoker, Dr. Harris did not find evidence of obstructive impairment due to cigarette smoking.
18. Dr. Harris further indicated in his report to the Commission that because of his asbestos exposure and cigarette smoking, the plaintiff would be considered to be at an increased risk for pulmonary malignancy and mesothelioma.
19. Great weight is given to the findings, opinions and recommendations of Dr. Darcey, Harris, Shaw, Lucas, Hayes, Johnson, Newman and Dula as set forth above.
20. Defendant admitted that plaintiff is suffering from asbestosis, an occupational disease, and that he was diagnosed with asbestosis and asbestos related pleural plaques while still employed by the Defendant. This admission is supported by the above-referenced medical records and reports submitted into the record without objection.
21. Plaintiff's pulmonary impairment due to his asbestosis is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and his asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
22. The plaintiff's average weekly wage for 1997 was $1,063.00 entitling the plaintiff to the maximum compensation rate of $512.00 per week for 1997 and the maximum compensation rate of $588.00 for the year 2000, which was the year of the Order of Removal, provided his wages did not decrease after 1997.
23. The issue of the constitutionality of N.C. Gen. Stat. §§ 97-61.1et seq. was raised by the defendant and this issue was subsequently rendered moot upon appellate court decisions finding the statute constitutional.
24. Plaintiff is subject to an Order removing him from any occupation which exposes him to the hazards of asbestosis.
25. Plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months during his employment with defendant.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease while in the employment of the defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the parties have stipulated that plaintiff has asbestosis; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; that plaintiff remains in defendant's employ; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby affirms the Order of Removal issued by the deputy commissioner. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesiaand Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The record contains plaintiff's average weekly wages for 1997, the year of his diagnosis, but does not provide plaintiff's average weekly wage for 2000, the year the Deputy Commissioner issued the Order of Removal. However, plaintiff's wages in 1997 are such that the calculation of his compensation reaches the maximum allowed by statute for the year 2000, which was $588.00 provided his wages did not decrease. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00 per week unless the parties provide the Commission with evidence of a wage decrease. N.C. Gen. Stat. § 97-61.5; Roberts v.Southeastern Magnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742
(1983).
6. The issue of the constitutionality of N.C. Gen. Stat. §§ 97-60et seq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25, § 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1et seq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. Following the second and third examinations and reports as required under N.C. Gen. Stat. § 97-61 et seq., further hearings may be required in this case. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings, if the parties cannot agree.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestosis. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation at the rate of $588.00 per week for 104 weeks as a result of his admitted contraction of asbestosis, and asbestos-related plural disease while employed by defendant, commencing on 11 January 2000, the date of the initial Order of Removal entered by Deputy Commissioner Jones. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of an attorney's fee.
2. Defendant shall pay an additional weekly sum of $29.40 (constituting 5% of the weekly compensation due as per agreement of the parties) to plaintiff which shall also be paid in a lump sum for the 104 weeks past benefit due in paragraph 1 above. As to any future weekly compensation or other compensation due, the defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5% entitling plaintiff to a total worker's compensation rate of $617.40. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearings following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
BSB:md